UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JEREMY DEAN WILKINSON, #47239[1] | Case No. 1: 22-cv-00104-BLW |
| Plaintiff, | **INITIAL REVIEW ORDER BY SCREENING JUDGE** |
| vs. | |
| CORIZON MEDICAL SERVICES; WARDEN BLADES; WARDEN CHRISTENSEN; DEPUTY WARDEN McKAY; JOHN MIGLIORI, M.D.; GRANT ROBERTS, HAS; RONA SIEGERT, RN; K. WALDRUM; LOR JOHNSON, | |
| Defendants. | |

The Complaint of Plaintiff Jeremy Wilkinson was conditionally filed by the Clerk

of Court due to his status as a prisoner and pauper. Dkts. 3, 1. A "conditional filing"

means that Plaintiff must obtain authorization from the Court to proceed. All prisoner and

pauper complaints seeking relief against a government entity or official must be screened

by the Court to determine whether summary dismissal is appropriate. 28 U.S.C. §§ 1915

& 1915A. The Court must dismiss any claims that state a frivolous or malicious claim,

---

[1] There are two individuals named Jeremy Wilkinson in IDOC custody. The Court adds this plaintiff's middle name and IDOC ID number to distinguish the two.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 1**

fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

After reviewing the Complaint, the Court has determined that Plaintiff can proceed on some of his claims against some of the Defendants.

## REVIEW OF COMPLAINT

### 1.  Summary of Allegations

Plaintiff is an Idaho Department of Correction (IDOC) prisoner. He asserts that, between January 11, 2017, and October 1, 2021, Defendants failed to treat a bulging disc injury. His severe pain began on January 11, 2017, when he heard a popping noise in his head, neck, and back. Plaintiff has one prosthetic eye, and the injury to his back caused vision loss in Plaintiff's remaining eye. He has been diagnosed with bulging discs at C-3, C-4 and C-6, C-7.  He asserts that the cause of the injury has been left untreated. He requests injunctive and monetary damages from prison officials, medical personnel, and Corizon, the contracted medical provider for the prison.

### 2.  Standard of Law

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). Plaintiffs are required to state facts, and not just legal theories, in a complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Title 42 U.S.C. § 1983 is an implementing statute that makes it possible to bring a cause of action under the Amendments of the United States Constitution.

To state an Eighth Amendment claim regarding prison medical care, a complaint must contain facts alleging that prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)). The Supreme Court has opined that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.*

Deliberate indifference exists when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Farmer v. Brennan,* 511 U.S. 825, 838 (1994). Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 3**

(1976). A complaint alleging that a defendant acted with deliberate indifference requires factual allegations that show "both '(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

### 3.  Discussion

#### A.  *Claims Against Corizon*

To bring a § 1983 claim against a private entity performing a government function, a plaintiff must allege that the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains. *Monell v. Dept. of Soc. Serv. of New York*, 436 U.S. 658, 694 (1978); *Tsao v. Desert Palace, Inc*., 698 F.3d 1128, 1139 (9th Cir. 2012) (*Monell* applicable to private entities performing government functions). That is, "[an entity] can be found liable under § 1983 only where the [entity] itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

Under *Monell*, requisite elements of a § 1983 claim against a municipality or private entity performing a state function are the following: (1) the plaintiff was deprived of a constitutional right; (2) the municipality or entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *See Mabe v. San Bernardino County, Dep't of Pub. Soc. Servs*., 237 F.3d 1101, 1110-11 (9th Cir. 2001). All policy-based claims must meet the pleading standards clarified by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Iqbal*, *supra*. That

is, mere "formulaic recitation of a cause of action's elements" is insufficient. *See Twombly*, 550 U.S. at 555.

Plaintiff has provided insufficient allegations to state a claim against Corizon, the prison contracted medical provider. Plaintiff alleges that Corizon had an unwritten policy to deny medical treatment to inmates. Corizon allegedly accomplished this purpose by scheduling prisoners see different providers all the time so that treatment had to start over each time. This vague set of allegations is implausible. It seems clear that Corizon simply fit the prisoners who needed medical care into the appointment times that corresponded to the dates and times various medical providers were working. It would be inefficient and a waste of taxpayer resources to wait to schedule patients in to see the same provider all the time rather than to schedule them with who is available, given the nature of all of the considerations that go into running a prison and a prison health care system.

If Plaintiff has facts showing that medical personnel did not regularly review a patient's chart to become familiar with the medical history before an appointment, that may be a training issue, which can be a different basis for a policy or practice claim, if the problem is widespread. A private entity performing a state function can be held liable for a constitutional violation if it fails to train its employees adequately and that failure is the cause of the violation *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-91 (1989); *Bd. of County Comm's v. Brown*, 520 U.S. 397, 409-10 (1997) (discussing limited scope of such a claim). To proceed on such a claim, the plaintiff must state facts in the complaint alleging the following: (1) the training program must be inadequate "in relation to the tasks the particular officers must perform"; (2) the officials must have been

deliberately indifferent "to the rights of persons with whom the [officials] come into contact"; and (3) the inadequacy of the training "must be shown to have 'actually caused' the constitutional deprivation at issue." *Merritt v. County of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989) (internal citations and punctuation omitted).

Plaintiff may desire to conduct discovery to determine whether he has sufficient facts to support that type of policy-based claim and then amend his Complaint at a later date. He cannot, however, rely on only his own medical treatment, supplemented by speculation.

Plaintiff also asserts that Corizon has a policy of giving prisoners medication to treat the symptoms of an injury, rather than treating the cause. Again, without more, Plaintiff's allegations tend to show only that Corizon, like any other similar health care business, encourages its medical providers to try conservative treatment methods before ordering more expensive and invasive methods. This is the same means of resource management (cutting costs and maximizing profits) that insurance companies in the health care industry use; without a theory and practice of careful resource management, there would be no health insurance companies. Individuals in the outside world are required to demonstrate that they have tried conservative treatments before doctors prescribe, and insurance companies pay for, more expensive and invasive treatments. Plaintiff's current allegations are insufficient to show that Corizon regularly requires its providers to forgo prescribing *necessary* treatment that it considers too costly in a manner that violates the Constitution.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 6**

Any amendment must clearly set forth causation. Plaintiff has failed to state facts showing that the type of treatment chosen by the providers resulted from a policy or custom of Corizon, rather than from their own allegedly negligent or deliberately indifferent decisions. An official's wrongful act or omission does not mean that the entity has a policy requiring that act or omission. The official's action might be *consistent* with such a policy, but mere consistency is not enough to state a claim under § 1983. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (holding that where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief'").

Should Plaintiff discover additional facts to show that Corizon, in fact, had policies, customs, or practices that reflect a standard of subjective deliberate indifference that it imposed upon its medical providers, Plaintiff may file a motion to amend the Complaint, together with a proposed amended complaint.

### B.  Discussion of Claims against Individual Medical Providers

Plaintiff asserts that Dr. John Migliori was deliberately indifferent to Plaintiff's serious medical needs by not providing him with a different treatment once it was determined that medications did not work to treat the pain and vision problems arising from the disc injuries. Plaintiff may proceed on this claim against this defendant in his individual capacity.

### C.  Discussion of Claims against Non-Treating Defendants

Plaintiff  alleges that several persons charged with overseeing prisoner medical care ignored his requests for different treatment. He may proceed against these defendants in their individual capacities:  Rona Siegert, Grant Roberts, and Lori Johnson. To the extent that Plaintiff seeks an injunction, he may proceed against Rona Siegert in her official capacity on that claim.

Plaintiff asserts that he had a personal contact with Warden Jay Christensen, and the warden said, "It is not my job to assure you get medical attention." Dkt. 3, p. 4. A prisoner cannot sue a high-level prison official unless the prisoner can show that he used the proper channels to bring the problem to the warden's attention. Potentially hundreds of inmates approach the warden daily with personal requests; however, the prison has a clear and simple system for prisoners to bring their problems to the attention of prison officials—the administrative grievance system. There is not enough here showing that the warden had personal participation in Plaintiff's medical care. In fact, that's exactly what the warden told him. Plaintiff cannot proceed against Warden Christensen.

Plaintiff asserts the exact allegations against Warden Randy Blades—including having the same conversation, with the same comment, "It is not my job to assure you get medical attention." Dkt. 3, p. 3. For the same reasons, Plaintiff cannot proceed against Warden Blades.

Plaintiff also asserts the same allegations against the warden's assistant, K. Waldrum. When Plaintiff told Waldrum his issues, Waldrum told him it was not Waldrum's job, and Waldrum instructed Plaintiff to file a concern form with the medical

department instead. For the same reasons that Plaintiff cannot proceed against the wardens, he cannot proceed against their assistant.

Plaintiff asserts that he reported his symptoms and lack of treatment to Deputy Warden McKay, and McKay refused to get him medical attention because he had filed a grievance about the lack of medical care. Plaintiff asserts this was both deliberate indifference and retaliation.

Plaintiff has asserted a vague and ambiguous factual allegation. Did McKay refuse to get medical help for Plaintiff because Plaintiff's complaint was correctly in the grievance system already and would be addressed in due course by those who had authority to make medical decisions? Or did McKay refuse to get medical help because he was angry that Plaintiff had used the proper channel to bring his problem to the attention of prison officials? Plaintiff will be required to file an amended complaint to assert further allegations against McKay if Plaintiff desires to proceed against him, including whether their conversation was in person or was part of the grievance system. On these facts, it appears that the deliberate indifference claim is not actionable for the same reasons the claims against the wardens are not actionable.

If Plaintiff desires to assert a retaliation claim against McKay, Plaintiff first must have brought the retaliation claim to the attention of prison officials in a grievance. Plaintiff should review the facts he brought in that grievance and repeat those facts in his amended complaint. If he did not grieve the alleged retaliation, any such claim likely would be subject to a motion to dismiss in this case.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 9

A First Amendment retaliation claim must allege the following: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, ... that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Although a "chilling effect on First Amendment rights" is enough to state an injury, *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001), "bare allegations of arbitrary retaliation" are insufficient to state a retaliation claim, *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985).

The timing of an official's action can constitute circumstantial evidence of retaliation, but there generally must be something more than simply timing to support an inference of retaliatory intent. *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995). Retaliation is not established simply by showing adverse activity by the defendant *after* protected speech; the plaintiff must show a nexus between the two. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (stating that a retaliation claim cannot rest on "the logical fallacy of *post hoc, ergo propter hoc*, literally, 'after this, therefore because of this'").

### D.  State Law Claims

Title 28 U.S.C. § 1367 provides that a district court may exercise supplemental jurisdiction over state claims when they are "so related" to the federal claims "that they form part of the same case or controversy under Article III of the United States Constitution." In other words, the supplemental jurisdiction power extends to all state and

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 10**

federal claims which one would ordinarily expect to be tried in one judicial proceeding. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). Plaintiff appears to bring medical negligence or malpractice claims against the medical defendants.

Though not a pleading requirement, Idaho Code § 6-1012 requires that, in a medical malpractice case, a plaintiff must prove that the defendant physician negligently failed to meet the applicable standard of health care practice of the community in which the health care was, or should have been, provided. The statute also provides that the defendant physician "shall be judged . . . in comparison with similarly trained and qualified [physicians] . . . in the same community, taking into account his or her training, experience and fields of medical specialization, if any."  I.C. § 6-1012.

Idaho Code § 6-1013 provides that the applicable standard of practice and the failure of the defendant physician to meet this standard must be established by plaintiff providing "one (1) or more knowledgeable, competent expert witnesses." This expert testimony may be admitted in evidence only if a foundation is first laid establishing (a) that the "opinion is actually held by the expert witness", (b) that the "opinion can be testified to with reasonable medical certainty", and (c) that the "expert witness possesses professional knowledge and expertise coupled with actual knowledge of the applicable community standard to which the testimony of the witness is addressed." I.C. § 6-1013.

Therefore, for his state law claims, Plaintiff will have to provide expert testimony that Defendants breached the applicable standard of healthcare practice. Such testimony may be helpful to, but is not a requirement for, Plaintiff's federal causes of action. The Court will liberally construe the Complaint to contain medical negligence or malpractice

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 11**

claims against John Migliori, M.D., and Rona Siegert, R.N. If he desires to bring other state law claims against other defendants, he will have to file an amended complaint to clarify the particular causes of action and the facts supporting such claims.

### 4. Conclusion

Plaintiff may proceed as outlined above. This Order does not guarantee that any of Plaintiff's claims will be successful; it merely finds that one or more is colorable, meaning that the claims will not be summarily dismissed at this stage. This Order is not intended to be a final or a comprehensive analysis of Plaintiff's claims, but it is only a determination that one or more of Plaintiff's claims is plausible and should proceed to the next stage of litigation.

### ORDER

**IT IS ORDERED:**

1.  Plaintiff's request for appointment of counsel (contained in the Complaint) is DENIED without prejudice. The Court will revisit appointment of counsel without the need for Plaintiff to file another motion after it has had an opportunity to review medical records and the position of Defendants.

2.  Plaintiff may proceed on his Eighth Amendment and supplemental state law claims against Dr. John Migliori and Rona Siegert, and Eighth Amendment claims against Grant Roberts, and Lori Johnson. All other claims against all other Defendants are DISMISSED, and all other Defendants are TERMINATED as parties to this action. If Plaintiff later

discovers facts sufficient to support a claim that has been dismissed, Plaintiff may move to amend the complaint to assert such claims.[2]

3.    Defendants will be allowed to waive service of summons by executing, or having their counsel execute, the Waiver of Service of Summons as provided by Fed. R. Civ. P. 4(d) and returning it to the Court within 30 days. If Defendants choose to return the Waiver of Service of Summons, the answer or pre-answer motion will be due in accordance with Rule 12(a)(1)(A)(ii). Accordingly, the Clerk of Court will forward a copy of the Complaint (Dkt. 3), a copy of this Order, and a Waiver of Service of Summons to the following counsel:

   a.    **Mary Karin Magnelli**, Deputy Attorney General for the State of Idaho, Idaho Department of Corrections, 1299 North Orchard, Ste. 110, Boise, Idaho 83706, on behalf of Defendant Rona Siegert.

   b.    **Kevin West and Dylan Eaton,** Parsons Behle & Latimer, 800 W. Main Street, Suite 1300, Boise, Idaho, 83702, on behalf of Defendants Dr. John Migliori, Grant Roberts, and Lori Johnson.

4.    Should any entity determine that the individuals for whom counsel

---

[2] Any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon or incorporate by reference prior pleadings. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 13**

for the entity was served with a waiver are not, in fact, its employees or former employees, or that its attorney will not be appearing for the entity or for particular former employees, it should file a notice within the CM/ECF system, with a copy mailed to Plaintiff, indicating which individuals for whom service will not be waived.

5.     If Plaintiff receives a notice from Defendants indicating that service will not be waived for an entity or certain individuals, Plaintiff will have an additional 90 days from the date of such notice to file a notice of physical service addresses of the remaining Defendants, or claims against them will be dismissed without prejudice without further notice.

6.     The parties must follow the deadlines and guidelines in the Standard Disclosure and Discovery Order for Pro Se Prisoner Civil Rights Cases, issued with this Order.

7.     Any amended pleadings must be submitted, along with a motion to amend, within 150 days after entry of this Order.

8.     Dispositive motions must be filed no later than 300 days after entry of this Order.

9.     Each party must ensure that all documents filed with the Court are simultaneously served upon the opposing party (through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5. Each party must sign

and attach a proper mailing certificate to each document filed with the court, showing the manner of service, date of service, address of service, and name of person upon whom service was made.

10.    The Court will not consider ex parte requests unless a motion may be heard ex parte according to the rules and the motion is clearly identified as requesting an ex parte order, pursuant to Local Rule of Civil Practice before the United States District Court for the District of Idaho 7.2. ("Ex parte" means that a party has provided a document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

11.    All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United States District Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

12.    No party may have more than three pending motions before the Court at one time, and no party may file a motion on a particular subject matter if that party has another motion on the same subject matter currently pending before the Court. Motions submitted in

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 15**

violation of this Order may be stricken, summarily denied, or returned to the moving party unfiled.

13.    Plaintiff must notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

14.    Pursuant to General Order 324, this action is hereby returned to the Clerk of Court for random civil case assignment to a presiding judge, on the proportionate basis previously determined by the District Judges, having given due consideration to the existing caseload.

DATED: September 13, 2022

B. Lynn Winmill
U.S. District Court Judge